Good morning. Good morning, and may it please the Court. Matthew Helland of Nichols-Castor for the Plaintiffs and Appellants, and I'd like to reserve any remaining time I might have for rebuttal. I'd like to start by talking about the minimum wage. California's minimum wage law demands separate, distinct, and actual payment for each hour worked. In this case, the undisputed facts show that plaintiffs worked hundreds of hours on the ground in the state of California for which Delta paid them nothing. The District Court erred by holding that Delta paid flight attendants for all their work time on the ground when the undisputed evidence shows Delta did not. California's unique minimum wage rule recognizes that nonproductive work time is a cost of doing business, and it prohibits employers from shifting that cost of doing business onto the backs of its workers. But that's exactly what Delta's flight pay formula does here. It pays only for flight time and pays nothing for time on the ground, meaning not only do flight attendants board the planes for free and deplane the planes for free, the flight attendants absorb the labor costs of any unexpected delays on the ground. Can I ask just, because I found it a little bit confusing, this duty period that kind of provides the floor, does that encompass all of the hours that an employee would actually work? It does. The duty period is the work day, and the one-for-two duty period credit, according to Delta, covers the whole work day. We disagree, but that disagreement isn't necessary in order for the court to reverse. Well, okay, but so let's assume that it covers all of the hours, you know, sort of productive and nonproductive time. I know that's not the right terminology, but it encompasses everything that you would possibly want to get paid an hourly wage for. I guess I don't understand why if the employer sets that as the floor and guarantees that you will be paid above the minimum wage for every single one of those hours you actually work, but we then have these alternative formulas that might guarantee you higher compensation. Why is that a violation of California minimum wage law? That is exactly the Gonzales case, Your Honor. Gonzales involved two formulas working in conjunction with one another. There was a minimum wage hourly guarantee that paid for all hours worked, and then there was the piece rate pay formula that only paid for the productive time and didn't pay for the nonproductive time. And the court held that there was no violation of law when the court actually paid under the minimum wage guarantee, but there was a violation of law when the employer paid under the piece rate formula because the piece rate formula didn't account for employee downtime. And there's a very helpful example in Gonzales that shows why this violates the law and why it allows the employer to shift the burden of nonproductive time onto the backs of the workers. Okay, maybe I'm just fighting with Gonzales, and you can correct me on that, but I guess I don't see how am I as the employer shifting the burden of nonproductive time onto you as the employee when I am guaranteeing you in this instance well more than the minimum wage for every single hour you work. I'm not saying I'm going to pay you $50 an hour for productive time and nothing for the other time. I'm going to pay you for every single hour you work at least double the minimum wage. That just strikes me as hard to understand why I'm in violation of the minimum wage law when you're getting paid for every single hour, and I've just come up with these alternative formulas to ensure that you might get more money, and not even more money that's calculated necessarily to actual hours worked. It's just it's a weird formula that has all sorts of substitute metrics, right? I have a few answers for that, Your Honor. I think, first of all, you might be grappling with California law as articulated in Armenta and Gonzales, but that is California law, and this— Well, yes and no. I mean, it's not controlling in the sense that the state's highest court has endorsed that, right? That's correct, Your Honor, but this case and the Boor v. JetBlue case are the only lower court cases that have had any difficulty in applying California law as articulated in Armenta and Gonzales. And then let's talk about why guaranteeing minimum pay is not enough. There's an example in the work rules at page, I think it's 367 of the excerpts of record, that talks about how the duty period formula works, the one-for-two credit, okay? The one-for-two credit kicks in when the duty period is more than twice the amount of flight time, so when you have equal amounts of paid time and unpaid time. In the example, there's a day that has six hours of flight time, and it's supposed to be a 10-hour duty period day, and the guarantees will pay you your six hours of flight time. But there's a delay, and because of the delay, the duty period is extended. And if the duty period is extended from 10 hours until 12 hours, Delta makes the flight attendant work those additional two hours for free. You can't say on the front end, I'm going to pay you a certain amount for the day, it's going to be a 10-hour day, but once you work 12 hours, you're not getting any more money. California law says you can't do that. And that's the piece about shifting the nonproductive time onto the backs of the workers. And this is very attractive for Delta because it gives it some certainty. We're going to try to pay under the flight pay formula as often as we can, and then if there are ground delays, Delta, the company, does not absorb the cost of those ground delays. It makes the workers absorb the cost of the ground delays. And that's what Gonzalez says is against the law. I'd like to address the job status test, especially in the context of wage claims. If the Tidewater California Supreme Court created a job status test, then Sullivan versus Oracle would have gone the other way, especially if it created the percentage-based job status test that the airlines are advocating for here. Could I just clarify for a second? So you're talking about the job status test, and are you really focusing your whole case at this point on the minimum wage argument, or are you still also pursuing wage statement claims? We are also pursuing wage statement claims, but our case is driven by the minimum wage claims. Do you need us to decide anything more than the minimum wage claims? I was a little unclear because your brief barely says anything about the wage statement, so I don't know what you want us to be deciding on appeal here. The piece that's unique to our case is the minimum wage claims, and the court should reverse and remand with instructions to enter judgment in plaintiff's favor on the minimum wage claims. There's a separate summary judgment order on the wage statement claims, 226, and those are wrapped up in some of the other issues that are present in some of the other cases here today. But on the question of whether the 226 claim should be certified to the California Supreme Court, if this court decides to do that, the California minimum wage claim should not because the law is clear under Armenta and Gonzales in our view, and there's no dispute that California law applies to work performed on the ground in the state, the principles of Sullivan control. And so going back to the job status test, just one example as to why this shifting percentage-based test doesn't work. Imagine a worker who starts employment with one month of work in California and then works in Nevada for two months. That first month of work was clearly covered by California law, but then after the two months of Nevada work, is the first month of work retroactively stripped of coverage? That doesn't make any sense. And then if the employee comes back – Well, now I'm confused what you're arguing for. So I thought – so if they have the month in California, maybe we agree with you that California law applies. But are you saying if you have two months where you're not in California at all, the wage statement still needs to be a California statement? Not for those two months because there's no work performed in California. Okay. I thought that was your argument. Yep. Our test under 226 is if there's California work, then 226 applies and there should be a California wage statement. The point is that a percentage-based job status test creates a moving target that makes compliance impossible. So you think a California wage statement for any month where you have California work and minimum wage for any work in California? Correct. But if that person goes out of California in that month, minimum wage isn't going to apply to those hours, right? Correct. Correct. We only seek minimum wage for time worked on the ground in the state of California. And that only makes sense. The gate agents taking the boarding passes are covered by California law. The luggage handlers loading the planes are covered by California law. Flight attendants are on the ground in California doing the same sort of work, and there's no basis for letting Delta work the flight attendants for free when it has to pay the gate agents and the luggage handlers under California law. I'd like to address also this RLA issue and the sort of general request on behalf of the airlines that there should be a uniform national standard. Congress has spoken in these areas, specifically with respect to in what circumstances there should be a national standard in the airline industry. It spoke in the Railway Labor Act, the Airline Deregulation Act, and the FQAA. By the way, I'm sorry to interrupt. Are your clients covered by a CBA? They are not, and that's the important distinction. Congress said in certain circumstances there's a national standard, and those do not apply here. There's no collective bargaining agreement. The Labor Code statutes don't affect the issues that would trigger ADA and FQAA. The whole wage order thing we were just talking about has nothing to do with your case. Not only does it have nothing to do with our case, it shows that both the IWC and Congress have considered in what situations state law should apply, and state law applies here. Really, there's an argument from the airlines against federalism. This is an area of traditional state power, and there is no federal preemption. I'd like to return to minimum wage just to see if I can help the Court a little bit. It's important to understand that 85 percent of plaintiffs' work days were paid under the flight pay formula. That is the predominant flight pay formula, and there's no disagreement here that the flight pay formula calculates the pay by measuring only the block time and not paying anything for the time on the ground. All of the arguments about minimum guarantee, they go to averaging. And how do we know that? So I guess I just have a question about whether the argument you're making makes sense in the sense that it'll necessarily help the employees, because we're about to hear a trucking case where when this argument was raised to the trucking company, they changed the pay formula to comply with minimum wage, and everyone was worse off. They started listing all the hours and paying much less per hour, and everyone got paid less. So your employees are actually getting paid more under this alternative thing, and I know it's disagreeing with Gonzales to ask this question, but I'm not sure it's helpful to the workers to push this point. I'd like your response to that. The same argument can be made in almost any wage in our case where there's a payment above the minimum standard. Take the example of a salaried employee who's paid $60,000 a year but should have been classified as non-exempt, and the employee sues for the unpaid overtime pay. It is certainly true that the employer could have paid that employee $10 an hour plus overtime, and the employee would have earned less, but that doesn't change the fact that the employer violated the law when it paid $60,000 without overtime. Regardless of what Delta does going forward to cure this fix, the reality is that flight attendants worked unpaid time on the ground. When there were delays, they alone bore the burden of those extended delays, and they loaded the planes for free and they deplaned the planes for free, and the flight pay formula applied 85% of the time. But I guess that assumes that you're, I mean, the thing that's confusing to me about this pay structure is that it is in the form of an agreement between the employee and the employer, right? And it's not, I guess I don't read it as saying, I don't know, even under the, what is it called, the flight pay? Flight pay formula. They're not really saying that we're going to guarantee you a certain hourly rate for every hour that you're in flight, and then you're not going to be compensated for the rest of the time that's involved. It's just, it's a formula, right, that involves kind of an alternative way of calculating what your compensation would be. But I guess I just don't, it doesn't seem to me it's like the case where the employer says, I'll promise to pay you $50 an hour for productive time that you're actually doing work, and, yeah, there's an equal amount of time that you're just going to be dead time, and we're just not going to pay you anything there, because that's not the nature of the agreement here. It's just it's a more, that's where I'm struggling with, so maybe you can help on that front. I understand your struggles, Your Honor. The agreement to pay $50 an hour for the productive time and nothing for the nonproductive time is our MENTA. The minimum wage guarantee is Gonzales. Neither Delta nor the district court have distinguished Gonzales on this very important point. In Gonzales, there was an explicit guarantee that we will pay you the minimum wage for every hour worked, and there was an explicit agreement that we'll pay you the piece rate formula if that's greater than the amount than the minimum wage pay, but that violated the law. If this court follows Gonzales, it must reverse and remand on the minimum wage claims. Yeah, maybe it's just Gonzales strikes me as questionable, but, yeah, if that's all we've got, maybe you're right on that. And there's a, the court can also look to Labor Code sections 221, 222, and 223, and those are the code sections that underlie our MENTA and also underlie Gonzales, and 223 especially goes to this issue that an employer cannot secretly pay a lower wage while claiming to pay the contract wage, and that's exactly what's going on here. In the summary judgment argument at the district court, I said, I said to the court, on this specific day, Delta paid 14 hours for 12 hours of work, and the district court said, well, isn't it true that they just paid a lower rate if you spread it across the entire 14 hours? That is exactly what California law prohibits. That's secretly paying a lower wage for all the hours it's taking from the pay for the productive time and spreading it over the nonproductive time. I get the secret thing, but there's nothing secret about this. This is an agreement up front that's fully disclosed to the employees, and they understand what that formula is, and so that's why I just don't feel like it's, the employer's not cheating you. It's just we're, here's what you and I are going to agree is going to govern the pay structure of this employment relationship, and so I don't know. I don't feel like your clients are being cheated in any way. Employees cannot contract away their right to minimum wage. That's a fundamental aspect of California law. The fact that there's an agreement to an illegal pay formula is irrelevant. But they're getting well more than the minimum wage. For every single hour you could possibly try to measure their work day by, they're getting way more than the minimum wage. That's why it just seems crazy for you to stand here and say that somehow there's been a violation of that law. They are getting more than the minimum wage only if you average the pay over all the hours, which California law says you cannot. And my light is red. Yeah, you are over your time. Thank you. We'll give you a little time for rebuttal. Thank you. We'll hear from counsel for the defendant. Good morning, Your Honors. May it please the Court. R.J. Hendricks with Morgan, Lewis & Bacchus on behalf of the defendant. It is not that this issue is all that confusing or that we've reached different results when other courts have looked at this particular issue, and I'm speaking specifically as to the minimum wage argument. The first case ever to address this was a district court in Massachusetts that also found that the Delta work rules are not unlawful averaging. The next court that looked at this was the Oman court, looking at all of the pay formulas, looking at all of the evidence that was presented, and also concluded this was not averaging. The Bernstein court, a court with which we have much disagreement with as to much of their decision, also concluded that because of the one-for-two duty period rig, this is not averaging. There is an express formula under our pay rules that accounts for all hours' work, the complete duty. The duty period is a federally defined sort of concept from the time that a flight attendant reports to work until the time that they are released. And for that entire period of time, they are paid in excess of $22 per hour. Yeah. That makes sense to me. But your opponent, of course, says, but this is just like Gonzales. And so why is it different from Gonzales? Well, it's not like Gonzales or any of those particular cases are meant to cases because first of which all of those cases, potentially the exception of one, was a piece rate case. This is not a piece rate formula. But why does that matter? I mean, it's equivalent, isn't it? I mean, there they had two formulas. Minimum wage was guaranteed. It was going to be at least minimum wage on both formulas. And you've got two other formulas. Why, if we call it piece rate or not piece rate, does it matter? I think it matters because of this. In all of those piece rate cases, one of the problems that the employee has is they never know the number of pieces at the time that they engage in the work. It's always something that is like, well, maybe I will replace so many wind chills today in the safe flight case. Yeah, but your employees don't know the delay because of fog either. But what they do know through the bid process is they know the duty periods. They know the flights. And in point of fact, the characterization that credits are not extended when there are delays is simply inaccurate. The formulas that we have, four formulas, which are always applied with respect to every duty period, and formulas also applied with respect to the rotation, account for all hours worked. And if that duty period is extended, that duty period formula accounts for all of that time. But it doesn't necessarily pay them more. I mean, they've got this perfect example in their brief about the guy who had the wind in his favor and then compared to the day where there are the delays and the person who worked fewer hours got paid more. Do you deny that example? Well, I think that there can be, because of the unique nature of weather and delays and things of that sort, you can have some idiosyncratic circumstances. That particular employee could have reported that and requested an extension of the duty period. That's within the practice. In most instances where this comes up, where the employee is not getting additional compensation, it is where there is a complete absence of a complete duty rig that encompasses all the productive time. If you look, for example, in maybe it's the Safe Flight case, you have a situation where an employee was called in after their duty and was asked to do work outside of the duty, and that was the situation which resulted in them not being compensated for all hours. But I mean, it seems like their example about the wind and the weather is not that atypical of airline flights. I mean, it is a very good example for them. But if these formulas are such that there are these not that unlikely events with wind and weather that mean that sometimes you get paid less for working more hours, that does seem to have at least tension with Gonzalez. Well, what I would say is looking at the wage order, the wage order specifically talks about piece rate, hourly, or otherwise. And we cannot read out of the wage order the ability to have a structure that is non-hour based that is otherwise. That is exactly what this is. It's a credit-based system that factors in a number of factors given a very complex sort of working environment where people aren't working regular routine schedules, where they can switch their schedules, change their schedules, have delays. We do have formulas that account for... So do you have any California case interpreting otherwise? Interpreting... Otherwise, the phrase you're relying on here? I've not seen a specific case that fully interprets it. What I would say is this, is that under principles of statutory construction, otherwise must mean something then, hourly, piece rate, or the specifically enumerated buckets that are listed within the statute. Or that language would be a superfluous. So it has to mean something. And the problem that plaintiffs have in this case is they're going to read that language out. They really want to convert this into everything must be strictly hourly. And that's not the structure that exists. Well, why wasn't Gonzales part of otherwise? Because Gonzales was a piece rate system. Gonzales was piece rate. So it fit within a particular structure. And if you look at these various cases... Is piece rate mentioned in the statute? It is. It is. It's one of those specifically enumerated buckets of pay structures that's listed here. So that's why it does matter that our system is not piece rate and why you see all of these other cases specifically talking about a piece rate system where they're targeting particular tasks, not a complete duty period, and they don't have a true hour component that covers report to release. So we're completely distinct. The cases, the courts that have analyzed this issue, DeSaint in Massachusetts, Oman in California, Boor and even Bernstein all reached the conclusion as... Was DeSaint about California law? It wasn't about California law, but it was about the factual question as to whether or not the work rules constituted unlawful averaging. But unlawful under some law, and we're trying to figure out what Gonzales means and what California law means. So I don't know how helpful that is. I understand, but I do think it's persuasive authority that another court with similar sort of standards that prohibits averaging has concluded that our structure is not averaging, and it's not alone. It's other California courts looking at this have reached the same conclusion. So in this... So what do you think about whether the California Supreme Court should think about this question? Given the case law, I don't believe that there's an issue that requires them to look at it. I think that it's pretty clear that our pay structure has a duty rig that encompasses all hours worked. It covers report to release. It provides a minimum wage above that, and we're paying more. And I think Your Honor's point is very, very important, and that is to say if you look at all of the sort of examples that are given, the one that they don't really strike, that they don't clarify is under the system that they were paid, they were paid more than that minimum wage guarantee, significantly so. So there is no benefit to the worker in this context. Interpreting this in this way does not benefit the worker. It's harmful to the worker, and workers are not being cheated. We have a bid system where everything is disclosed, where they pick and bid on it. They know exactly what it is, which is another material distinction between a piece rate where I don't know in a given day how many widgets I will do. I don't know in a day how many things I will do. And so there's that problem. So as I understand what all four lawyers so far have told us, it is that there's no need to certify because California law is clear. The only trouble is they all disagree as to what the statute says. I'm not understanding why we shouldn't certify. Well, again, I think in this particular instance, the conclusions of the Oman court, the conclusions of the Brewer court, the conclusions in DeSaint, I know it's not exactly on point, but all of that, and just the plain language of the agreements, I don't think there's really a real question that we compensate for all hours worked and that we satisfy California law with that, as to that particular issue. I think with respect to the jobsitis issue, I would argue that, again, it's pretty clear here. We believe that tidewater is the controlling standard. And this case presents a very important sort of question. Understand the standard that plaintiffs are advocating in this case. Their standard is you work any time in California, under any circumstances, for any length, and you are subject to all of the panoply of California wage and hour law. And in the law, I mean, they're asking for two things. They're asking for the wage statement rules and minimum wage. That's all that's at issue. Well, and those, that's enough. But the principle that they are articulating is simply, if a person were to fly from L.A. to, or from New York, heading to Hawaii, they have a layover in California, and they are working on a memo, working on a presentation for a speech that's going to take place in Hawaii, that is work in California, and it triggers California obligations. That's the premise that they articulated below. That's the premise that they're really arguing here. And so when they tell you that the job situs test requiring that there be at least either the worker exclusively or principally work in California, that that's not the test, what they're doing is telling you that any amount of time worked in California under any circumstances triggers these obligations. Okay. And let's say that we agreed with you on that point, that at least as to folks who don't live in California, their theory just doesn't work. Okay. So, but let's say that we were persuaded in the, say, like, in the Ward case, in the Vidrio case, where all the class members are California residents, and they do some work in California. You have at least one plaintiff in your case that fits that bill, right? I believe that he recently transitioned to Los Angeles. That's correct. Okay. So let's say that we thought as to that person, you know, that person was entitled to a California wage statement or the timing thing or whatever's that issue here, but that as to all the non-resident folks, it's a no-go. What would happen to the judgment that we've got before us? Well, I would say two points to that. First to which I would agree with comments from an earlier attorney that said, clearly under Sullivan, residence is not the test. Okay. But let's take the hypo. So say we believe you win on part of your case and not on the other part, depending on where the plaintiffs live. What happens to this case at that point? I think in that case you would still apply a do they principally work in California and if you can. Maybe I'm not understanding the hypothetical. I'm sorry. Yeah. Let's say that we're persuaded that if you live in California and you work sometime, not principally, but 15%, 20% of your time, 10%, I don't know. You live in California. You work some of the time in California, but less than 50% that you are entitled to a 226 wage statement. Let's say that we were to hold that. Okay. But this class is a blended one. It has all of these non-resident folks who they want to impose liability solely on the fact, as you say, that they work for however little time in California. And let's say that we say that's not okay. Those people are not entitled to a 226 wage statement. All I'm trying to figure out is what happens to the judgment that we've got before us. Well, what I would say is this. I still think that there is the dormant commerce clause. Okay. Procedurally, I think this is a procedural question. Would we send it back for the class to get divided up? Would we divide up the class? This is a procedural question. You're going to lose on part of your case. What happens procedurally? Well, there was no class certification order issued in our particular case. Our case had summary judgment that was brought prior to certification. Ah. So to the extent there is an alteration of those judgments in some fashion, it would be remanded to the district court for further proceedings. And we would, at that point, make a determination as to what, if anything, is certifiable and follow whatever additional guidance the court gave us with respect to that. But we do not have a certified case in this – a certified class in this case. We just have, if I remember, is it four plaintiffs? I believe that's correct, Your Honor. Who, at this stage at least, are just pursuing individual claims on behalf of themselves? No. They are pursuing class claims, but procedurally, the parties agreed and the court allowed dispositive motions to be reached and decided before the issue of class certification to determine whether or not there are claims to be certified. Right. But I guess I – I confess I'm a little hazy on this, but I thought the basis for the district court's judgment was to say, essentially, you've got this blended class, and you want me to hold, as your opponent said, that I can impose liability under 226, let's just say, just on the basis of having worked in California. And the court says, that's not – no, I can't do that. So if that's all you're asking me for, then you lose, and I'm granting judgment against you. I guess that's why I was trying to figure out, well, what if we thought that there were some people in this class that could prevail? The issue that the court decided was, looking at the specific flight histories of the named plaintiffs, that they worked insufficient time to trigger obligations under California law. That with Mr. Omon, for example, he was really based out of New York. He was a New York resident. Only 7 percent of his flights touched California. But just hypothetically, if – we may not, but if we disagreed with that and thought that for the plaintiff who lives in California, a different result should follow. Then what would happen is, is that as to the other plaintiffs, they'd be out. Summary judgment would still be affirmed. As to the one that is denied, we would go back and litigate the remaining cases. They would litigate potentially a PAGA claim and or attempt to certify a class based upon whatever definition at that point. That's what I need to know. Yeah. Thank you. So with respect to the Dormant Commerce Clause, I want to – I mean, our case presents an interesting sort of issue because what you have here is this notion of attempting to apply extraterritorially basically California's sort of method of calculation. You know, the wage order requires it to be reported in a certain way. Again, our system is completely different. Even if you were to conclude, which I don't think is accurate, that our system constitutes averaging, most jurisdictions allow averaging. Okay? So in order to comply with California's wage order, we would have to somehow rethink and rejigger and configure for California something that was compliant with California when in fact our system is compliant under the federal rules, it's compliant under most state rules even if it was concluded to be averaging, and it's compliant under California law. What are the federal rules? Because it seemed from the amicus brief that the only federal rule is that you get a W-2 at the end of the year for your taxes, and that is definitely not going to tell you how many hours you worked at what wage. Is that what you're talking about as the federal rule that you think is the best one here? No. What I was referring to was this notion that the manner in which we lawfully compensate employees does not fit within the framework of what's required to be reported under the California wage statement. Okay, but when you talk about federal law as if we don't have to worry about California law because federal law takes care of this, I don't know of any federal law that takes care of this. Is there a federal law that speaks to making sure that employees know every hour they worked or even the formula that's used or anything like that? There's no specific pay statement requirement under federal law. There is the W-2 requirement at the end of the year with respect to taxes. But the point that I'm making is, is that in order to comply with a California wage statement requirement that requires compensation to be reported in certain ways, that would be a fundamental adjustment of our compensation structure. It has that impact. And the last point that's really, really critical here is this. The premise in Hearst 2, a case out of Illinois, is so on the point. It's the same premise that the Court in Ward adopted, and that is the airline industry is a national sort of industry. It requires a level of uniformity. This is not a situation like in Sullivan where if they wanted to hire California trainers, they could. When you're dealing with interstate transportation, inherently you're going to be going from one jurisdiction to the next. You cannot have a situation where states are chasing each other, going to the extreme, implementing all sorts of regulations and then saying, figure it out. As your honors have already pointed out, that can be a very difficult process, understanding what a statute means, understanding what a regulation means, going to local ordinances, having judges to disagree over those particular standards. That's what we're expected to adopt and figure out. So it seems like California law in this Wage Order 9 tried to have an exemption for your type of situation, but you happen to not have a collective bargaining agreement. I'm a little confused about, like, what to do with you because it seems like this should apply to you, but for some reason I don't know what the history is here. We don't. Remember that having a collective bargaining agreement is something that the parties agree to. And to the extent our workers, and we're talking about the flight attendants here, we're not making arguments about other airline employees that don't fly interstate. So that's an important thing to keep in mind here. You could have an RLA agreement with a workforce that's not necessarily flying interstate. It could be people that are strictly working in California or ground sort of crew in that sense. Okay? So the reality of it is that our working conditions are such that the workers have not decided that that's something that they need. If they felt that we were not compensating them fairly, that's a right that they have under federal law to negotiate for and bargain for. It can be addressed. And I want to make the point that simply because there might be some RLA exemption within the wage order, that does not mean that that reflects an intent that California law was to apply extraterritorially. It only means that with respect to... Well, it seems like it kind of shows that it's trying not to for certain things, for the wage statement, but only then in a certain category that you don't fit. It only means potentially that with respect to that work that's performed in California, that exemption would apply. It is not the inverse that says, and therefore we view that California law applies everywhere you go. With respect to our flight attendants, understand that the work that they do, again, distinguishing it from Sullivan, the trainers in Sullivan trained. That was their job. And they trained in California for complete periods of time. There's really nothing, the essential component of what a flight attendant does that's on the ground. The essential component of the job of flight attendant is in the air. It is to provide safety support and passenger support in the air. That is the nature of the job. And just because of the realities of life, that people have to start some place and end some place, doesn't mean that California gets to be the tail that wags the dog by saying you spend an hour in our state, therefore we get to dictate your entire compensation system. These are interstate workers working unlike the trainers. Their job inherently on a given day, a given shift, a given duty period, covers multiple jurisdictions. That is a different fact pattern. And so the reliance on Sullivan for the proposition that any and all work that happens to be performed in California is subject to this is not what was decided in Sullivan. The controlling fact pattern is Tidewater. And it speaks to this notion that among other qualifications, the essential component of getting those protections is that you primarily or exclusively work in California. And that's an important safeguard to avoiding some floodgate that any time anyone for any reason comes in, pay statement, minimum wage, and couple the two of those components. Plaintiffs are arguing that minimum wage under California requires every last second to be compensated. So it makes no difference how short that phone call was. It makes no difference how short that e-mail check was. Under their standard, they would be adopting a legal standard if they reject the jobsitis test that says for any amount of time that anyone comes in for whatever the purpose, that's compensable. And now you have these obligations. That was never intended by California law. Okay. Thank you, counsel. We've let you exceed your time. We appreciate the arguments. Thank you. Let's see how much time do you have for about, I guess, two minutes? Yeah, you use it all up? Okay. Thank you. The record has pages and pages of documents outlining flight attendants' job duties while they're on the ground in California. There's no dispute that there's work performed. Delta merged with Northwest in 2008 and defeated a union challenge. Therefore, there's no collective bargaining agreement, and the result is they have to follow state law because there's no RLA preemption. This case is very different than the example of an employee working on a report for one hour in the state of California on a layover. In that hypothetical situation, the employer would have all sorts of defenses. The employer maybe didn't suffer or permit the work. Maybe the employer didn't control the work. Maybe the employer had no knowledge or control over the work. Maybe it's truly de minimis work that would be subject to the de minimis exception. Those are not the facts here. These three plaintiffs worked hundreds of unpaid hours on the ground in the state of California. Their work must be done here. It's purposeful and intentional, and Delta assigns them to work here. Going back to Gonzales, we address in footnote three of our reply brief this argument about or otherwise, and Gonzales, we point out that Gonzales did address the language or otherwise and said California law applies no matter how you craft the pay structure. Lastly, this case is on appeal on a grant of summary judgment saying there is no factual dispute that Delta paid for all hours worked. I respectfully submit that the court cannot affirm without looking at the examples we identified in our brief. Specifically, June 21st, 2014, Michael Lair worked an hour of unpaid time on the ground in San Francisco. We say it is undisputed that time was unpaid and Delta has not answered. Thank you. Okay. Thank you very much for the helpful arguments. The case just argued will be submitted, and we will hear argument next in the last case on our calendar, which is Shook v. Indian River Transport Company.
judges: Watford, Friedland, Rakoff